John Y. Bonds, III
State Bar I.D. No. 02589100
Joshua N. Eppich
State Bar I.D. No. 24050567
H. Brandon Jones
State Bar I.D. No. 24060043
Brandon J. Tittle
State Bar I.D. No. 24090436
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

*Proposed Attorneys for Debtor*
*And Debtor-in-Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| MAC CHURCHILL, INC. d/b/a | § | |
| MAC CHURCHILL ACURA, | § | CASE NO. 18-41988 |
| | § | |
| Debtor. | § | |
| | § | |

**DEBTOR'S EXPEDITED MOTION FOR THE ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) GRANTING THE PURCHASER THE PROTECTIONS AFFORDED TO A GOOD FAITH PURCHASER, AND (C) GRANTING RELATED RELIEF**

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

Mac Churchill, Inc. d/b/a Mac Churchill Acura (the "Debtor" or the "Company") hereby moves (the "Motion") for entry of an order substantially in the form attached hereto (the "Sale Order") under sections 105(a), 363(b), 363(f), and 363(m) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2), 2002(c)(l), 6004(a), 6004(c), 6004(f), and 6004(h) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), (i) authorizing the Debtor to sell substantially all of its assets (collectively, the "Acquired Assets") to North Fort

Worth Dealership Acquisition, LP and/or its Assigns (the "Buyer") free and clear of all liens, claims, encumbrances, and other interests, pursuant to that certain Asset Purchase Agreement, dated as of March 14, 2018, substantially in the form attached as **Exhibit A** to both the Motion and Sale Order (including all schedules, exhibits, and amendments, the "Asset Purchase Agreement"), (ii) granting the Buyer the protections afforded to a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code (as defined below), and (iii) granting related relief as described herein. In support of the Motion, the Debtor relies upon and incorporates by reference the Declaration of Mac N Churchill in Support of Chapter 11 Petition, First Day Motions and Expedited Motions (the "First Day Declaration"), filed with the Court concurrently herewith. In further support of the Motion, by and through its proposed undersigned counsel, respectfully represents:

## JURISDICTION

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m), and Bankruptcy Rules 2002(a)(2), 2002(c)(l), 6004(a), 6004(c), 6004(f), and 6004(h).

## RELIEF REQUESTED

3. The Debtor seeks entry of an order (i) approving the sale of the Acquired Assets free and clear of all liens, claims, encumbrances, and other interests to the extent set forth in the Asset Purchase Agreement and pursuant to section 363(b)(1) and 363(f) of the Bankruptcy Code, (ii) granting the Buyer the protections afforded to a good faith purchaser pursuant to section

363(m) of the Bankruptcy Code, and (iv) granting certain related relief. A motion requesting the assumption and assignment of specific contracts is being filed contemporaneously with this Motion.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor continues to operate its business and manage its properties as a debtor and debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the Northern District of Texas (the "United States Trustee"). No trustee or examiner has been appointed in the Chapter 11 Case.

6. The Debtor owns and operates a franchised Acura automobile dealership in Fort Worth, Texas (the "Dealership"). The Dealership includes the sale of new and used automobiles and the service and repair of automobiles. The Dealership is operated pursuant to a sales and service dealer agreement (the "Dealership Agreement") with American Honda Motor, Inc. — Acura Division ("Honda").

7. Additional factual background information regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the Chapter 11 Case, is set forth in detail in the First Day Declaration.[1]

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

## **THE DEBTOR'S PREPETITION MARKETING EFFORTS**

8.      In late 2017 and the beginning of 2018, the Debtor began efforts to market the Dealership for sale.  Marketing the dealership of a specific established brand is different from marketing other businesses in that the Dealership operates under a Dealership Agreement.   In order for a Dealership Agreement to be assigned to a buyer, the purchaser must be vetted and approved by Honda.  The approval process with Honda is strict and can be extremely time consuming.

9.      Few potential purchasers are able to satisfy the stringent operational and financial criteria to be approved by Honda.  In fact, the car dealer "world" at this level is a rather small group.  Therefore, marketing efforts focus on individual phone calls to parties known to be able to meet the strict criteria.  The process also includes informing Honda of the intent to sell and them making suggestions based on their current approvals.  Via these two avenues, prior to filing the Petition, the Debtor contacted numerous potential buyers and entertained inquiries from potential purchasers introduced by Honda.

10.     By the middle of March, the Debtor had received two letters of intent, one from the Buyer.  Following numerous conversations and analysis of the two offers, the offer proposed by the Buyer was accepted by the Debtor and the proposed Asset Purchase Agreement was negotiated and executed.  The proposed Buyer's offer was accepted for numerous reasons including: (1) higher and better financial terms, (2) an agreed upon quick closing date with a short due diligence period, and (3) most importantly, a knowledge that the proposed Buyer would, in all likelihood, be approved by Honda.

11.     The fact that the proposed Buyer is able to close quickly and with no concerns as to ability to fund the purchase price is also essential to the importance of the proposed sale and

was heavily weighed by the Debtor in support of its decision. At the beginning of this year, it became clear that the Debtor was in danger of being out of terms with respect to its floor plan financier, Ally. The Debtor contacted Ally regarding these concerns and it was agreed upon by the parties that a sale was in the best interests of all parties to maximize the value of the Dealership. An agreement was reached with Ally with respect to the floor plan financing and operations moving forward with respect to closing the sale. Ally is familiar with the proposed sale and supports the proposed sale.

12. The Debtor conducted a thorough and robust sales process prior to accepting the Asset Purchase Agreement. The Asset Purchase Agreement was negotiated at arm's length and constitutes the highest and best offer on the market for the assets.

## THE ASSET PURCHASE AGREEMENT

13. As more fully described in the Asset Purchase Agreement, and as summarized below, the Debtor proposes to enter into a transaction whereby the Buyer will acquire substantially all of the Debtor's assets.

(a) **Customer Lists, Records and Goodwill**. Purchaser shall purchase from Seller the Customer Lists, Records and Goodwill for the aggregate amount of $4,000,000.00;

(b) **New Cars**. Purchaser shall purchase all New Cars from Seller at Dealer Net, less the cost of damages to any New Car which has not been repaired; provided, however, that Purchaser shall not be obligated to purchase any New Car with damages thereto in excess of $1,000 whether or not repaired. Any Car, which would otherwise be a New Car, but which has more than 2,500 miles on its odometer or does not satisfy all requirements to be a New Car, would be purchased, if at all, in the same manner as a Used Car unless such New Car qualifies as a Demonstrator, in which case such New Car will be treated as a Demonstrator;

(c) **Demonstrators**. Purchaser shall purchase up to ten (10) of Seller's Demonstrators at Seller's Dealer Net, less the cost of damages to any Demonstrator which has not been repaired; provided, however, that each such Demonstrator must have less than 5,500 miles, and, further, provided, however, that Purchaser shall not be obligated to purchase any Demonstrator with damages thereto in excess of $1,000 whether or not repaired. For each Demonstrator that is purchased by Purchaser from Seller, there will be a deduction of $.25 per mile for each mile on its odometer up to, but not more than, 5,500 miles. Any

Demonstrator with more than 5,500 miles, or more than $1,000.00 in damage whether or not repaired, shall be purchased, if at all, in the same manner as a Used Car;

(d) **Rental and Loaner Vehicles**. Purchaser shall purchase Seller's Rental and Loaner Vehicles at the prices set forth in the First Amendment to the Asset Purchase Agreement (the "1st Amendment");

(e) **Used Cars**. Seller and Purchaser shall attempt to agree upon a price for each Used Car. To the extent that Seller and Purchaser can mutually agree to the value and price for any Used Car, Purchaser would purchase such Used Car at the agreed upon price. To the extent that Seller and Purchaser cannot reach an agreement with regard to the price for any Used Car, Seller shall keep such Used Car and Purchaser shall have no obligation to purchase such Used Car;

(f) **Genuine Manufacturer Parts; Non-Manufacturer Acura Parts; Miscellaneous Inventories; Fixed Assets**. Purchaser shall purchase all of Seller's Genuine Manufacturer Parts, Non-Manufacturer Acura Parts; Miscellaneous Inventories and Fixed Assets for the aggregate amount of $2,000,000.00, subject to the provisions of Section 1.3, as amended by the 1st Amendment;

(g) **Work-In-Process**. Purchaser shall purchase all of Seller's Work-In-Process as of the Closing Date at Seller's internal cost for the work actually performed and parts actually installed as of the date of Closing with no profit allocated to such Work in Process; and

(h) **New Car Deposits and Used Car Deposits**. All New Car Deposits and Used Car Deposits (for those Used Cars purchased by Purchaser) will be transferred to Purchaser by Seller.

## BASIS FOR RELIEF

**A. The Court Should Approve the Sale of the Acquired Assets Pursuant to Section 363(b) of the Bankruptcy Code**

14. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

15. Once a debtor articulates a valid business justification for proposed sale procedures, its justification is evaluated according to the business judgment rule, which is a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Broughton Ltd. P'ship*, 474 B.R. 206, 218 (Bankr. N.D. Tex. 2012) (citing *In re Cont'l Air Lines*, 780 F.2d at 1226 ("[T]he court relies on an estate representative's sound business judgment in approving acts outside the ordinary course of business."); *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions."). Parties objecting to the debtor's decision to sell property of the estate must make a showing of "bad faith, self-interest or gross negligence." *Integrated Res.*, 147 B.R. at 656; *see also In re Johns-Manville Corp.*, 60 B.R. at 616 ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

16. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) ("It is a well-established principle of bankruptcy law that the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

17. Here, the Debtor respectfully submits that sound business reasons support its decision to enter into the Asset Purchase Agreement. First, as noted above, the Debtor extensively marketed its assets during successive marketing processes for nearly four months. The marketing

process resulted in two letters of intent with the Debtor determining in its business judgment that the offer by the proposed Buyer maximizes the value of the Debtor's assets. The Debtor does not foresee obtaining a higher or better offer from a competing purchaser which could close in a time under which the Debtor could remain operating. An expeditious closing of the sale is essential to enable the Debtor to expeditiously complete its chapter 11 restructuring without incurring additional operating expenses at a time when the Debtor has minimal cash on hand. Accordingly, the Debtor, in its sound business judgment, believes that sale of the Acquired Assets to the Buyer is in the best interests of its estate and that the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code.

**B.  The Court Should Authorize the Sale of the Acquired Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to Sections 363(f) and 105 of the Bankruptcy Code**

18. The Debtor also seeks to sell the Acquired Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

   a. applicable nonbankruptcy law permits sale of such property free and clear of such interest;

   b. such entity consents;

   c. such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

   d. such interest is in bona fide dispute; or

   e. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale of the Acquired

Assets "free and clear" of liens and interests. *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

19. The Debtor submits that section 363(f) permits the sales of the Acquired Assets free and clear of all interests. Each such interest that is not the result of an assumed liability satisfies at least one, if not more, of the tests of section 363(f) of the Bankruptcy Code. For example, if a holder of an interest receives requisite notice and does not object within the notice period, such holder will be deemed to have consented to the proposed sale, and the property then may be sold free and clear of such holder's interest. Further, any claimant asserting a claim against the Acquired Assets could be forced to accept money in satisfaction of its interest. 11 U.S.C. § 363(f)(5). Ally, a lienholder on the Acquired Assets, is a bank and can be required to accept money in satisfaction of its interest. Ally has consented to the proposed sale.

20. The Court may also authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Code, even if section 363(f) did not apply. *See In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001) ("Bankruptcy courts have long had the authority to authorize the sale of estate assets free and clear even in the absence of section 363(f)."); *see also Volvo White Truck Corp. v. Chambersberg Beverage, Inc.* (*In re White Motor Credit Corp.*), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

**C. The Court Should Grant the Buyer the Full Protections Afforded to a Good Faith Buyer Pursuant to Section 363(m) of the Bankruptcy Code**

21. Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property

> in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. While the Bankruptcy Code does not define "good faith," the court in *In re Sullivan Central Plaza I, Ltd.*, 106 B.R. 934 (Bankr. N.D. Tex. 1998) stated that:

> [t]he type of conduct of a Buyer which would destroy its good faith status under § 363(m) involves fraud, collusion between the Buyer and other bidders of the trustee, or an attempt to take grossly unfair advantages of other bidders.

106 B.R. at 938 (citing *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 (5th Cir. 1981)).

22. Here, there is no fraud or collusion between the Buyer, its Assigns, or any of its affiliates and the Debtor. The Debtor, led by its restructuring professionals, and the Buyer engaged in extensive arm's-length discussions to reach a deal. Further, the Debtor attests that neither the proposed Buyer of the Acquired Assets nor any of his Assigns or affiliates are "insiders" of the Debtor within the meaning of section 101(31) of the Bankruptcy Code, and are not controlled by, or acting on behalf of, any insider of the Debtor. Accordingly, the Debtor requests the Court find that the Buyer is a "good faith" buyer under section 363(m) of the Bankruptcy Code.

**D.     A Private Sale of the Acquired Assets is Appropriate Under Bankruptcy Rule 6004**

23. Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1) (emphasis added). *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) (holding that manner of sale is within the debtor's discretion); *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr.

E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

24.     Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. *See, e.g.*, *In re Pritam Realty. Inc.*, 233 B.R. 619 (D. P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private· sale should be approved.  The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores. Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

25.     The Debtor submits that the proposed private sale of the Acquired Assets is appropriate in light of the facts and circumstances of this Chapter 11 Case.  Specifically, and as more fully described herein and in the First Day Declaration, given that the Acquired Assets have already been marketed, the Debtor believes that the probability that a competing bidder will emerge with a higher and better offer that can close within the necessary time frame to allow the Dealership to continue as a going concern is extremely low; that extreme probability which would likely result in the Dealership closing its doors does not justify incurring the costs and risks associated with a delay of the sale.

26.     The transaction described in this Motion will allow the Debtor to maximize the value of the Acquired Assets and provide a significant benefit to the Debtor's estate.  Because

private sales are specifically authorized under Bankruptcy Rule 6004 and the Debtor believes that the Buyer's offer represents the highest and best offer for the Acquired Assets, the Debtor requests that the Court approve the proposed private sale on the terms described herein.

## **DISTRIBUTIONS TO BE MADE WITH RESPECT TO SALE**

27. The Debtor requests that at closing of the sale proceeds from the sale be used to pay: (1) any outstanding liens in existence with respect to customer trade-in-cars which have not been paid off, estimated at not more than $1,000,000.00; (2) $250,000.00 to Bonds Ellis Eppich Schafer Jones LLP to be held in trust; (3) any outstanding sales taxes and registration fees collected from customers, but which have yet to be remitted to the appropriate state agencies such that the customers can secure good title to their vehicles, estimated at not more than $250,000.00; (4) payment of any escrow and title fees; and (5) the remainder being paid to Ally in partial satisfaction of its secured claim.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

28. Pursuant to Bankruptcy Rule 6006(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. To preserve the value of the Acquired Assets and limit the costs of administering and preserving such assets, it is critical that the Debtor promptly and expeditiously close the Sale, and assume and assign the Franchise Agreement, as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor hereby requests that the Court waive the 14-day stay period under Bankruptcy Rule 6006(d). The Debtor submits that the relief requested is necessary and appropriate, is in the best interests of the Debtor and its estate and should be granted in all respects.

## NOTICE

29. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Northern District of Texas; (b) the Debtor's 20 largest unsecured creditors; (c) counsel to Ally; (d) all known holders of liens, claims, and encumbrances secured by the assets constituting the Acquired Assets; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

30. No previous request for the relief sought herein has been made to this Court or any other court.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Sale Order, substantially in the form attached hereto granting the relief requested herein; and (ii) grant such other and further relief as the Court may deem proper.

Date: May 21, 2018
     Fort Worth, TX

Respectfully Submitted,

*/s/ John Y. Bonds, III*
John Y. Bonds, III
State Bar I.D. No. 02589100
Joshua N. Eppich
State Bar I.D. No. 24050567
H. Brandon Jones
State Bar I.D. No. 24060043
Brandon J. Tittle
State Bar I.D. No. 24090436
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
John@bondsellis.com
Joshua@bondsellis.com
Brandon@bondsellis.com
Brandon.Tittle@bondsellis.com

*Proposed Attorneys for Debtor
and Debtor-in-Possession*