United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-1247

Elizabeth Ziegler Young,
for the United States Trustee
elizabeth.a.young@usdoj.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | | |
|---|---|---|---|
| **In re:** | § | | |
| | § | | |
| **Mac Churchill, Inc. d/b/a,** | § | Case No. | **18-41988-mxm-11** |
| **Mac Churchill Acura** | § | | |
| | § | | |
| **Debtor-in-Possession.** | § | | |

**United States Trustee's Objection to Debtor's Plan of Liquidation
(Docket Entry No. 131)**

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 6 objects to the Debtor's Plan of Liquidation (the

"Plan," Docket Entry No. 131), and would respectfully show as follows:

**Overview**

The United States Trustee objects to confirmation for the following reasons:

- The Debtor should clarify that any Plan releases and exculpations do not violate 11

    U.S.C. § 524(e).

- Nothing in the Plan should release any professional prospectively from liability.

- Nothing in the Plan should release any party from criminal liability or the regulatory

    actions of any governmental agencies.

**Background and Case History**

1. On May 21, 2018, Mac Churchill, Inc., d/b/a Mac Churchill Acura. ("Debtor") filed a voluntary chapter 11 bankruptcy petition, initiating case 18-41988-mxm-11.

2. Debtor owned and operated a franchised Acura dealership in Fort Worth. [docket no. 7 at ¶ 6].

3. Prior to filing, the Debtor owed approximately $18,000,000.00 to Ally on a first lien basis. [Motion for Use Of Cash Collateral; docket no. 6 at ¶ 9].

4. On June 1, 2018. the Court granted the Debtor's Motion to Sell Substantially all of the assets of the estate to North Fort Worth Dealership Acquisition, LP. [docket no. 64]

**Plan of Reorganization; Release and Exculpation Provisions**

5. On March 8, 2019, the Debtor filed its Plan of Liquidation ("Plan"). [docket no. 131]

6. The Plan contains the following release and exculpation provisions.

7. The term "Released Persons" is defined in Section 1.2.79 of the Plan (page 10) as follows:

> 1.2.79. **Released Persons**: means the Debtor and any of its Related Persons (each solely in its capacity as such), as well as their and the Debtor's officers, directors, partners, and Affiliates, including Mac Churchill.

8. The term "Related Persons"

> 1.2.78. **Related Persons**: means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former affiliates.

9. Section 12.3 of the Plan contains the following releases:

12.3. <u>Releases by Holders of Claims and Interests and Other Related Persons</u>.

**Except as otherwise provided in the Plan, the Confirmation Order, as of the Effective Date, each holder of a Claim or an Interest that voted in favor of the Plan or has not opted out of the releases as provided on the ballot, whether such holder of a Claim or an Interest votes to reject the Plan, and each Released Person shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Debtor, the Liquidating Debtor, and the Released Persons, including Churchill, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether**

**known or known, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, this Chapter 11 Case, the Debtor's restructuring, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Persons, the restructuring of Claims and Interests before or during this Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence relating to the Debtor taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Person that constitutes willful misconduct (including fraud) or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument or agreement executed to implement the Plan.**

10. Section 12.4 of the Plan contains the following releases:

[remainder of the page left intentionally blank]

12.4. <u>Releases by the Debtor and its Estate</u>.

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or Confirmation Order or pursuant to any other order previously entered by this Bankruptcy Court, for good and valuable consideration, including the service of the parties released herein to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, all Released Persons, including the Debtor's professionals and Mac Churchill, are deemed released and discharged by the Debtor and its Estate, and the Liquidating Debtor, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertible on behalf of the Debtor, or the Liquidating Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, the Liquidating Debtor, or its respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on ore relating to, or in any manner arising from, in whole or in part, the Debtor, the Liquidating Debtor, this case, the Debtor's restructuring, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Persons, the restructuring of Claims and Interests before or during this Chapter 11 Case, the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Person or a former officer or director of the Debtor that constitutes willful misconduct (including fraud) or gross negligence. The foregoing release shall not apply to any express contractual or financial obligations or any right or obligations arising under or that is part of the Plan or any agreements entered into pursuant to, in connection with, or contemplated by the Plan.

## **Argument and Authority**

**The release and exculpation provisions should be modified or struck from the Second Amended Plan.**

11. The release provisions included in the Plan should comply with 11 U.S.C. § 524(e), which was never intended to protect non-debtor parties from "any negligent conduct that occurred during the course of the bankruptcy." *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) ("*Pacific Lumber*"). In *Pacific Lumber,* the Fifth Circuit disallowed the release of the debtors' officers, directors, and

professionals because there was no evidence that they "were jointly liable for any…pre-petition debt. They are not guarantors or sureties, nor are they insurers." *Id.*

12. The Fifth Circuit struck down all non-debtor releases except those releasing the unsecured creditors' committee and its members because "its members are the only disinterested volunteers" seeking release. *Id.* at 253. *See also United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 227 (3rd Cir. 2003)(holding that plan release provisions did not render moot United States Trustee's appeal of indemnity provisions of financial advisor's employment agreement); *In re Thru, Inc.*, Case 3:17-CV-1958-G, 2018 WL 5113124 at *21-22 (N.D. Tex. October 19, 2018)(holding that plan's injunctive and exculpatory provisions were impermissible third party releases).

13. In a recent Southern District of New York Bankruptcy Court case, the Court questioned its ability to approve opt-out third party releases and found 1) the non-voting released parties did not consent to the proposed releases as the releases were unilateral contracts and 2) the debtors had failed to establish sufficient grounds for the court to approve the broad releases proposed in the plan. *See In re SunEdison, Inc*., 576 B.R. 543 (S.D.N.Y. Bankr. 2017).

14. Accordingly, notwithstanding the opt-out language in the release provisions, to the extent that the Court determines to confirm the Plan, the Court should require that the Debtor clarifies that nothing in the Plan effects a release in contravention of section 524(e) and *Pacific Lumber*. Moreover, the Court should further require the Debtor to demonstrate how the non-voting creditors will receive benefit from these releases.

**<u>Attorneys ethically precluded from being released</u>**

15. Attorneys practicing in federal courts in this circuit are subject both to federal and state ethics canons. The Fifth Circuit Court of Appeals has held that federal law applies to attorney

conduct in federal court. *In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In *Dresser Industries,* the Fifth Circuit applied the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the American Law Institute's *Restatement of the Law Governing Lawyers. Id.* at 544-45. In *Dresser,* the Fifth Circuit held, after examining relevant federal ethics canons, that an attorney may not sue a client he represents in another matter. *Id.* at 544.

16. ABA Model Rule of Professional Conduct 1.8(h)(1) prohibits lawyers from making "an agreement prospectively limited the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement." Similarly, Texas Disciplinary Rule 1.08(g) of Professional Conduct provides:

> (g) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

Texas Disciplinary Rule of Professional Conduct 1.08(g).

17. *Restatement (Third) of the Law Governing Lawyers* §54(2) provides that an "agreement prospectively limiting a lawyer's liability to a client for malpractice is unenforceable." (2000). Such an "agreement is against public policy because it tends to undermine competent and diligent legal representation." *Restatement (Third) of the Law Governing Lawyers* § 54 (2000).

18. The Plan also provides for a release of "Debtor's Professionals." The proposed releases therefore prospectively limit counsel's liability to the parties and as such are not permissible. *In re Thru, Inc.*, 2018 WL 5113124 at *22 (finding that plan's exculpatory provisions releasing professionals and other third parties from liability incurred in connection with, among other actions, in formulating or implementing plan, were improper).

19. Furthermore, Debtor cannot unilaterally release Debtor's counsel from prospective liability given that counsel owes a duty not only to the Debtor but also to the bankruptcy estate. While the Bankruptcy Code does not specifically impose a fiduciary requirement on counsel for debtors-in-possession, "[i]t is undisputed that counsel of a debtor-in-possession owes certain fiduciary duties to both the client debtor-in-possession and the bankruptcy court." *ICM Notes, Ltd. V. Andrews & Kurth, LLP,* 278 B.R. 117, 124 (S.D. Tex. 2002), *aff'd.* 324 F.3d 768 (5th Cir. 2003). Thus while "counsel to a debtor in possession may not owe a duty directly to creditors, counsel does have an obligation to ensure the debtor properly maintains the estate." *In re Texasoil Enterprises, Inc.*, 296 B.R. 431, 435 (Bankr. N.D. Tex. 2003). *See, e.g., In re Pacific Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (striking third-party releases of attorneys in conjunction with confirmation of plan of reorganization).

**Plan should not enjoin governmental agencies from pursuing regulatory or criminal actions**

20. The United States Trustee further requests that the confirmation order provide that no party shall be released from any causes of action or proceedings brought by any governmental agencies pursuant to their regulatory functions, including but not limited to criminal and environmental matters. The United States Trustee requests that the Debtors include the following more specific language in the confirmation order:

> *Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and*

*local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.*

## Conclusion

Wherefore, for the reasons set forth herein, the United States Trustee respectfully requests that the Court sustain his objections and grant to the United States Trustee such other and further relief as is just and proper.

DATED: April 22, 2019

Respectfully submitted,

WILLIAM T. NEARY
UNITED STATES TRUSTEE

/s/ Elizabeth Ziegler Young
Elizabeth Ziegler Young
Trial Attorney
Texas State Bar No. 24086345 (Also by New York)
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967 x 1247
elizabeth.a.young@usdoj.gov

## Certificate of Service

I certify that I sent copies of the foregoing document via ECF and by regular, first class United States mail on April 22, 2019, to the following:

/s/ Elizabeth Ziegler Young
Elizabeth Ziegler Young

| **Mac Churchill, Inc. d/b/a Mac Churchill Acura** 3125 N.E. Loop 820 Fort Worth, TX 76137 | **John Y. Bonds, III Joshua N. Eppich** Bonds Ellis Eppich Shafer Jones 420 Thockmorton Street, Suite 1000 Ft. Worth, TX 76102-5304 | **Donald Hogan Cram, III** Severson and Werson One Embarcadero Center, Suite 2600 San Francisco, CA 94111 |
|---|---|---|

**Kyle L. Dickson**
700 Gemini
Suite 220
Houston, TX 77058

**Jimmy D. Parrish**
Baker & Hostetler LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, FL 32801-3432

**Eboney D. Cobb**
Perdue Brandon Fielder Collins & Mott
500 E. Border St, Suite 640
Arlington, TX 76010

**Laurie A. Spindler**
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207

**Kimberly A. Walsh**
Texas Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX 78711-2548

**Mark E. Smith**
Baker Hostetler LLP
811 Main Street
Suite 1100
Houston, TX 77002

**Brandon J. Tittle**
Pronske & Kathman, P.C.
2701 Dallas Parkway
Suite 590
Plano, TX 75093

**Behrooz P. Vida**
The Vida Law Firm, PLLC
3000 Central Drive
Bedford, TX 76021

**Ernest Leonard**
Friedman & Feiger, LLP
5301 Spring Valley Road, Suite 200
Dallas, TX 75254

**Bryan C. Assink**
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton St., Suite 1000
Fort Worth, TX 76102