John Y. Bonds, III
State Bar I.D. No. 02589100
Joshua N. Eppich
State Bar I.D. No. 24050567
H. Brandon Jones
State Bar I.D. No. 24060043
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

*Attorneys for Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| MAC CHURCHILL, INC. d/b/a | § | |
| MAC CHURCHILL ACURA, | § | CASE NO. 18-41988 |
| | § | |
| Debtor. | § | |
| | § | |

## <u>AMENDED PLAN OF LIQUIDATION</u>

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS ...................................................................................1

    1.1.    Scope of Defined Terms. ..............................................................1
    1.2.    Defined Terms. ............................................................................1

ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS ...................................11

    2.1.    Unclassified Claims. ..................................................................11
    2.2.    Allowed Administrative and Priority Tax Claims. ....................11

ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS .......................13

    3.1.    Class 1 Claims:  Priority Non-Tax Claims ...............................13
    3.2.    Class 2 Claims:  Ally Secured Claim.........................................13
    3.3.    Class 3 Claims:  Honda Secured Claim .....................................13
    3.4.    Class 4 Claims:  Other Secured Claims .....................................13
    3.5.    Class 5 Claims:  American Financial Secured Claim. ...............13
    3.6.    Class 6 Claims:  Unknown Insurance Reserve Claims. ..............13
    3.7.    Class 7 Claims:  General Unsecured Claims .............................13
    3.8.    Class 8 Claims:  Equity Interest Holders ..................................13

ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS ...............................13

    4.1.    Treatment of Class 1 Claims (Allowed Priority Non-Tax Claims) .......................14
    4.2.    Treatment of Class 2 Claim (Ally Secured Claim).....................14
    4.3.    Treatment of Class 3 Claim (Honda Secured Claim) .................14
    4.4.    Treatment of Class 4 Claim (Other Secured Claims).................14
    4.5.    Treatment of Class 5 Claim (American Financial Secured Claim) ......................15
    4.6.    Treatment of Class 6 Claims (Unknown Insurance Reserve Claims)...................15
    4.7.    Treatment of Class 7 Claims (General Unsecured Claims) ................................15
    4.8.    Treatment of Class 8 Interests (Interests). .................................15
    4.9.    Tax Identification Numbers ........................................................15

ARTICLE V. MEANS FOR THE IMPLEMENTATION OF THE PLAN .................15

    5.1.    Liquidating Debtor......................................................................15
    5.2.    Vesting of Assets .......................................................................15
    5.3.    Management of the Liquidating Debtor.......................................16
    5.4.    Continued Operations .................................................................17
    5.5.    Actions Without Bankruptcy Court Approval. ...........................17
    5.6.    Costs of Continued Operations ...................................................17
    5.7.    Depositories. ...............................................................................17
    5.8.    Maintenance of Register. ............................................................17
    5.9.    Determination of Disputed Claims .............................................17

ARTICLE VI. INSURANCE RESERVE FUND .........................................................................18

6.1.  Insurance Reserve Fund. ........................................................................18
6.2.  Assets of the Insurance Reserve Fund. ..................................................18
6.3.  Rights and Powers of the Insurance Reserve Fund and the Fund Administrator ..18
6.4.  Appointment of a Fund Administrator ...................................................18
6.5.  Insurance Reserve Claim Form ..............................................................19
6.6.  Insurance Reserve Fund Distribution .....................................................19
6.7.  Costs of Insurance Reserve Fund ...........................................................19
6.8.  Depositories ...........................................................................................19
6.9.  Maintenance of Register ........................................................................19
6.10. Liability of Third Parties ........................................................................20

ARTICLE VII. AMERICAN FINANCIAL SETTLEMENT .....................................................20

7.1.  Parties to the American Financial Settlement. .......................................20
7.2.  American Financial Secured Claim ........................................................20
7.3.  American Financial Settlement Payment ................................................20
7.4.  Releases by the Parties. ..........................................................................20

ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........................20

8.1.  Assumption or Rejection of Executory Contracts and Unexpired Leases. ...........20
8.2.  Approval of Assumption or Rejection.. ..................................................20
8.3.  Rejection Damages Bar Date ..................................................................21

ARTICLE IX. DETERMINATION OF CLAIMS .....................................................................21

9.1.  Objections to Claims...............................................................................21
9.2.  Distributions upon Allowance or Disallowance of Disputed Claims .....21
9.3.  Contingent Claims ..................................................................................21

ARTICLE X. PRESERVATION OF LITIGATION CLAIMS ..................................................21

10.1. Retention of Estate Litigation Claims ....................................................21
10.2. Prosecution of Estate Litigation Claims .................................................22
10.3. Distribution of Estate Litigation Claim Proceeds ..................................22
10.4. Preservation of Insurance .......................................................................22

ARTICLE XI. CONDITIONS PRECEDENT ............................................................................22

11.1. Conditions to Confirmation ...................................................................22
11.2. Conditions to Effectiveness ...................................................................23
11.3. Waiver of Conditions..............................................................................23
11.4. Notice of Effective Date .........................................................................23

ARTICLE XII. DISCHARGE AND RELEASE ........................................................23

    12.1.   Discharge ........................................................................................23
    12.2.   Permanent Injunction. ....................................................................24
    12.3.   Releases by Holders of Claims and Interests and Other Related Persons. ...........25
    12.4.   Releases by the Debtor and its Estate. ..........................................25
    12.5.   Information Regarding the Release, Injunction, and Related Provisions. .............26

ARTICLE XIII. RETENTION OF COURT JURISDICTION ....................................27

    13.1.   Retention of Bankruptcy Court Jurisdiction. ..........................................27

ARTICLE XIV. MODIFICATION AND REVOCATION OF THE PLAN ...............................30

    14.1.   Immediate Binding Effect. ................................................................30
    14.2.   Modification of the Plan. ..................................................................30
    14.3.   Revocation or Withdrawal of the Plan. ...............................................31

ARTICLE XV. MISCELLANEOUS PROVISIONS .................................................31

    15.1.   Payment of Statutory Fees. ..............................................................31
    15.2.   Governing Law. .............................................................................31
    15.3.   Corporate Action. ..........................................................................31
    15.4.   Severability of Plan Provisions. .........................................................31
    15.5.   Successors and Assigns. ..................................................................32
    15.6.   Reservation of Rights. .....................................................................32
    15.7.   Further Assurances. ........................................................................32
    15.8.   Notice and Service of Documents. .....................................................32
    15.9.   Conflicts. .....................................................................................33
    15.10.  Exemption From Certain Transfer Taxes. .............................................33
    15.11.  Plan Supplement. ...........................................................................33
    15.12.  Determination of Tax Liability. ..........................................................34
    15.13.  Entire Agreement. ..........................................................................34
    15.14.  Closing of the Chapter 11 Case. .......................................................34
    15.15.  Change of Control Provisions. ..........................................................34
    15.16.  Substantial Consummation. ..............................................................34
    15.17.  No Admission Against Interest. .........................................................34
    15.18.  Post Confirmation Notice. ................................................................34

## INTRODUCTION

Pursuant to section 1121(c) of the Bankruptcy Code[1], the Debtor hereby respectfully proposes this Plan for the resolution of the outstanding claims against and any equity interests in the Debtor. The Plan is a liquidating plan and does not contemplate the continuation of the Debtor's business. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, properties, and operations; a summary and analysis of this Plan; and certain related matters.

Nothing contained herein shall constitute an offer, an acceptance, or a legally binding obligation of any party in interest. This Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

## ARTICLE I.
## DEFINED TERMS

1.1.   Scope of Defined Terms.

For purposes of the Plan, the following terms shall have the meanings set forth below unless the context clearly requires otherwise. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.2.   Defined Terms.

1.2.1.  **Acura Real Estate**: means the real estate parcels located at 3125 NE North Loop 820.

1.2.2.  **Acura Real Estate Owners**: means the owners of the Acura Real Estate: Mac Churchill Properties North, Ltd. and MCLCDL, Ltd.

1.2.3.  **Acura Real Estate Sale**: means the sale of the Acura Real Estate by the Acura Real Estate Owners to the Buyer.

1.2.4.  **Ally**: means Ally Financial Inc. and Ally Bank.

---

[1] Unless otherwise defined in this Plan, all capitalized terms in this Introduction are as defined in Article I of this Plan.

1.2.5. **Ally Secured Claim**: means the claim belonging to Ally. Prior to the Petition Date, the Debtor, as borrower, and Ally, as lender, entered into that certain Inventory Financing and Security Agreement dated August 8, 2014, as amended and supplemented, and thereafter additional loan agreements related thereto (the "**IFSA**") for the acquisition of vehicle inventory for sale or the financing of vehicles already purchased at the Dealership. The Ally loan was further evidenced by the Commercial Loan and Security Agreement dated September 3, 2014, and the Commercial Loan and Security Agreement dated September 3, 2015 by and between the Debtor and Ally (the "**Commercial Loan and Security Agreements**"). The Ally loan was essentially a revolving line of credit whereby the Dealership obtained and repaid advances on a daily basis as vehicles were acquired and/or financed by the Dealership and then sold in the ordinary course of business. These advances, known as "floorplan advances", were each secured by a specific vehicle and substantially all other assets of the Dealership. Pursuant to the Ally loan, the Debtor granted a pre-petition, first-priority security interest in substantially all of its assets. Ally filed a UCC-1 Financing Statement in connection with its Collateral. In addition, Ally, the Debtor, and Auto Mall executed a Cross Collateral, Cross Default and Guaranty Agreement dated August 5, 2014 (the "**Cross Collateral Agreement**"), pursuant to which Acura and Auto Mall guaranteed payment and performance of all of the obligations of Acura and Auto Mall to Ally. On September 1, 2015, Churchill executed a Guaranty, pursuant to which he personally guaranteed payment and performance of all of the Debtor's obligations to Ally, limited to a maximum liability of $2,000,000 (the "**Churchill Guaranty**"). On March 23, 2018, Ally, the Debtor, Auto Mall, and Churchill executed that certain Forbearance Agreement dated as of March 23, 2018 (the "**Forbearance Agreement**," and collectively with the IFSA, the Commercial Loan and Security Agreements, the Cross Collateral Agreement, the Churchill Guaranty, and the Forbearance Agreement, the "**Ally Loan Documents**"), pursuant to which Churchill assigned to Ally his rights to receive 58% of the net proceeds of the sale of the Acura Real Estate in exchange for the forbearance. Pursuant to the Ally Loan Documents, Ally asserts that it had a lien on all of the Debtor's assets including the Debtor's cash ("**Cash Collateral**"). The Debtor sought in the Chapter 11 Case the right to use Cash Collateral from Ally [Docket No. 6]. On June 14, 2018, the Bankruptcy Court entered a final order authorizing the use of Cash Collateral [Docket No. 80] (the "**Final Cash Collateral Order**").

1.2.6. **Administrative Claim**: means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority in payment under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) any indebtedness or obligations

incurred or assumed by the Debtor after the Petition Date in the ordinary course of business in connection with the conduct of its business; (c) any Professional Fee Claims incurred before the Effective Date; (d) all fees and charges assessed against the Estate under Chapter 123 of title 28 of the United States Code, sections 1911-30; (e) obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court and (f) Claims under section 503(b)(9) of the Bankruptcy Code.

1.2.7. **Administrative Claim Bar Date**: means the first Business Day that is forty-five (45) days after the Confirmation Date.

1.2.8. **Affiliate**: means any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person and, with respect to any specified natural Person, any other Person having a relationship by blood, marriage, or adoption not more remote than first cousins with such natural Person. For purposes of this definition, "controlling" (including, with correlative meanings, the terms "controlled by" and "under direct or indirect common control with"), as used with regard to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by agreement, or otherwise.

1.2.9. **Allowed**: means, with reference to any Claim, except as otherwise provided herein:

(i)     a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which such Debtor, Liquidating Debtor or any other party in interest has not timely filed an objection in accordance with the Plan;

(ii)    a Claim that either is not a Disputed Claim or has been allowed by a Final Order;

(iii)   a Claim that is allowed (i) pursuant to any stipulation with the Debtor concerning the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court upon proper notice to parties in interest; (ii) pursuant to any stipulation with the Debtor concerning the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court or (iii) in any contract, instrument, indenture or other agreement entered into or assumed pursuant to the Plan;

(iv)    a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been

allowed by a Final Order, in either case only if a Proof of Claim has been timely filed; or

(v)     a Claim that is allowed pursuant to the terms of the Plan; provided, however, unless otherwise specified herein or by order of the Bankruptcy Court, the term "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date.

1.2.10. **American Financial**: means American Financial & Automotive Services, Inc., American Financial Warranty Corporation and their Affiliates.

1.2.11. **American Financial Obligation:** means American Financial's portion of the refund claims belonging to those customers who cancel their Service Contracts after the Effective Date. It does not include the Debtor's obligation as defined in paragraph 1.2.85.

1.2.12. **American Financial Secured Claim**: means the claim asserted by American Financial. Prior to the Petition Date, the Debtor, as borrower, and American Financial, as lender, entered into that certain Promissory Note dated November 3, 2017 (the "**American Financial Loan**") to provide the Debtor funds for working capital. The American Financial Loan was also subject to a Security Agreement dated November 3, 2017 ("**American Financial Security Agreement**"). American Financial filed a UCC-1 Financing Statement in connection with its Collateral. American Financial alleges that pursuant to the American Financial Security Agreement, it has a lien on all MasterTech vehicle service contracts sold by the Debtor, including all contract rights and other rights to receive the payment of money arising under or with regard to such service contracts.

1.2.13. **American Financial Settlement**: means the agreement between the Debtor and American Financial to resolve the American Financial Secured Claim by paying the American Financial Settlement Payment to American Financial within sixty (60) days from the Effective Date as set forth in Article VII.

1.2.14. **American Financial Settlement Payment**: means the lump sum payment of $375,000.00 from the Liquidating Debtor and Auto Mall to American Financial pursuant to the terms of the American Financial Settlement.

1.2.15. **Avoidance Actions**: means all statutory causes of action preserved for the Estate under §§ 510, 542, 543, 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code that the Debtor or the Estate may have against any Person.

1.2.16. **Assets**: means all assets of the Debtor as of the Confirmation Date.

1.2.17. **Auto Mall:** means MLSC Holdings, L.P.

1.2.18. **Auto Mall Sale**: On October 31, 2018, MLSC Holdings, L.P. closed the sale of its real property generally known as "Mac Churchill Auto Mall" located at 3737 Airport Fwy, Bedford, Texas 76021.

1.2.19. **Bankruptcy Code**: means the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

1.2.20. **Bankruptcy Court**: means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

1.2.21. **Bankruptcy Rules**: means the Federal Rules of Bankruptcy Procedure, as amended, or any successor rules.

1.2.22. **Bar Date**: means September 27, 2018, which is the date fixed by the Bankruptcy Court by which Persons asserting a Claim against, or Interest in, the Debtor (except Administrative Claims and Claims for which a later date is provided pursuant to Fed. R. Bankr. P. 3003) was required to file a Proof of Claim or interest or a request for payment or be forever barred from asserting a Claim against or Interest in the Debtor or its property, from voting on the Plan, and from sharing in distributions under the Plan.

1.2.23. **Business Day**: means any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

1.2.24. **Buyer**: means the North Fort Worth Dealership Acquisition, LP and/or its assigns.

1.2.25. **Cash**: means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, wire transfers of immediately available funds, or other similar items.

1.2.26. **Causes of Action**: means all of the Debtor's actions, causes of action, choses in action, liabilities, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition

Date or during the course of the Chapter 11 Case, through and including the Effective Date.

1.2.27. **Chapter 11 Case**: means the case under Chapter 11 of the Bankruptcy Code in which the Debtor is the Debtor and Debtor-in-possession, pending before the Bankruptcy Court.

1.2.28. **Churchill**: means Mac Churchill in his personal capacity.

1.2.29. **Claim(s)**: means any obligation for which the Debtor or its property is liable and as defined in sections 101(5) or 102(2) of the Bankruptcy Code.

1.2.30. **Class**: means a category of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category.

1.2.31. **Collateral**: means any property or interest in property of the Estate subject to a Lien to secure the payment of performance of a Claim, provided the Lien not being subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

1.2.32. **Claimant**:  means the holder of a Claim against the Debtor or its property, or of any Interest.

1.2.33. **Confirmation Date**: means a determination by the Bankruptcy Court by entry of the Confirmation Order that the Plan satisfies section 1129 of the Bankruptcy Code.

1.2.34. **Confirmation Hearing**: means the hearing required by section 1128 of the Bankruptcy Code.

1.2.35. **Confirmation Order**: means the order entered by the Bankruptcy Court following the Confirmation Hearing confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.2.36. **Contingent Claim**: means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event which has not occurred, and (b) has not been Allowed on or before the Confirmation Date.

1.2.37. **Creditor**: means any holder of a Claim, whether or not such Claim is an Allowed Claim, encompassed within the statutory definition set forth in Bankruptcy Code § 101(10).

1.2.38. **Dealership**: means the standalone automobile retail franchise selling new and used automobiles in Fort Worth, Texas under the assumed name "Mac Churchill Acura."

1.2.39. **Dealership Agreement**: means that certain Acura Automobile Dealership Sales and Service Agreement dated June 1, 2015 by and between the Debtor and Honda.

1.2.40. **Dealership Refund**: means the contractual refund owed by the Dealership to a customer when a Service Contract is terminated prior to the expiration of its term.

1.2.41. **Debtor**: means Mac Churchill, Inc. d/b/a Mac Churchill Acura.

1.2.42. **Disallowed**: means in reference to a Claim, a Claim or any portion of a Claim that is not Allowed, including by being disallowed, overruled, withdrawn, or expunged by Final Order.

1.2.43. **Disclosure Statement**: means a disclosure statement approved by the Bankruptcy Court pursuant to 11 U.S.C. § 1125.

1.2.44. **Disputed**: means with respect to Claims or Interests, any Claim or Interest: (a) that is listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtor or any other party-in-interest has (i) interposed a timely objection or request for estimation, or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each case where such lifting, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

1.2.45. **Effective Date**: means the first Business Day that is fifteen days after the Confirmation Order becomes a Final Order.

1.2.46. **Estate**: means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.2.47. **Estate Litigation Claims**: means all rights, claims, counterclaims, defenses, torts, Liens, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages and demands whatsoever in law or in equity, including Avoidance Actions, whether known or unknown, contingent or otherwise, that the Debtor or the Estate may have against any Person as of the Effective Date.

1.2.48. **Executory Contracts**: means any executory contract or unexpired lease which is subject section 365 of the Bankruptcy Code.

1.2.49. **Final Order**: means an order or judgment, the operation or effect of which is not stayed, as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired, and as to which no appeal or petition for review or motion for re-argument has been taken or been made and is pending for argument.

1.2.50. **General Unsecured Claims**: means a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or any other Claim entitled to priority treatment under 11 U.S.C. § 507.

1.2.51. **Hamud**: means Ihmud ("Chris") Hamud.

1.2.52. **Honda**: means American Honda Motor, Inc. – Acura Division.

1.2.53. **Honda Finance**: means American Honda Finance Corporation.

1.2.54. **Honda Secured Claim**: means the claim asserted by Honda Finance in connection with certain loaner vehicles provided by Honda to the Debtor prior to the Petition Date pursuant to the Dealership Agreement. Prior to the Sale, in which Honda Finance received both the proceeds of its pre-petition Collateral and its actual Collateral pursuant to the Sale Order, Honda Finance alleged that it had a lien on all of the Debtor's loaner vehicles.

1.2.55. **Impaired**: means when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of § 1124.

1.2.56. **Insurance Reserve Fund Assets**: means the Cash transferred from the Liquidating Debtor's Assets in an amount up to a maximum of $200,000.00[2] on the Effective Date which will be used to fund the Unknown Insurance Reserve Claims from the Insurance Reserve Fund.

1.2.57. **Insurance Reserve Fund**: means the reserve account managed by the Fund Administrator as of the Effective Date to make ongoing payments to Unknown Insurance Reserve Claimants from the Insurance Reserve Fund in accordance with the terms of the Plan.

1.2.58. **Interest(s)**: means any equity interest in the Debtor including common or preferred stock.

1.2.59. **Lattouf**: means Sharbel Lattouf.

---

[2] This is an estimated amount based on the current cash on hand at the Debtor. This number may decrease based on Administrative Expenses incurred.

1.2.60. **Lien**: means a lien as defined in § 101(37), except a lien that has is subject to avoidance in accordance with §§ 544, 545, 546, 547, 548, 549.

1.2.61. **Liquidating Debtor**: means the Debtor as the liquidating Debtor under the terms of this Plan.

1.2.62. **Liquidating Debtor's Remaining Assets**: means those remaining Assets of the Debtor after the deduction of Administrative Claims, the American Financial Settlement Payment, and the Insurance Reserve Fund Assets.

1.2.63. **Manager**: means John Tittle, Jr.

1.2.64. **MasterTech**: means the name of a product sold by American Financial.

1.2.65. **MLSC Holdings, L.P.** means standalone automobile retail franchise in Bedford, Texas under the assumed name "Mac Churchill Auto Mall."

1.2.66. **Other Secured Claims**: means and refers to any Secured Claim asserted by a creditor that is not otherwise defined in the Plan.

1.2.67. **Person**: means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

1.2.68. **Petition Date**: means May 21, 2018, the date on which the petition was filed commencing the Chapter 11 Case.

1.2.69. **Plan**: means this Plan of Liquidation, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the terms of the Plan, including, except where the context otherwise requires, all its annexed exhibits and schedules, if any.

1.2.70. **Plan Documents**: means collectively, (a) the Plan, and (b) the Disclosure Statement, and any other contracts, instruments, releases, and other agreements or documents to be executed in order to consummate the transactions contemplated under the Plan or otherwise necessary to effect and further evidence the terms and conditions of the Plan.

1.2.71. **Priority Tax Claim**: means a Claim of the kind specified in § 507(a)(8) against the Debtor.

1.2.72. **Professional**: means a Person: (a) employed in the Chapter 11 Case in accordance with an order of the Bankruptcy Court under §§ 327,

328 or 1103 and to be compensated for services under §§ 327, 328, 329, 330, and 331; (b) for whom compensation and reimbursement has been Allowed by a Final Order under § 503(b); or (c) those individuals who have been retained by the Debtor or Liquidating Debtor to perform routine tasks.

1.2.73.  **Professional Fee Bar Date**: means the deadline established by Article 2.2.

1.2.74.  **Professional Fee Claims**: means an Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with §§ 328, 330, 331, 503(b).

1.2.75.  **Proof of Claim**: means a Proof of Claim filed against the Debtor in the Chapter 11 Case.

1.2.76.  **Pro Rata**: means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims of the same Class (and, to the extent required for an interim distribution, and any reserve for Disputed Claims).

1.2.77.  **Related Persons**: means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former affiliates.

1.2.78.  **Released Persons**: means the Debtor and any of its Related Persons (each solely in its capacity as such), as well as their and the Debtor's officers, directors, partners, and Affiliates, including Churchill.

1.2.79.  **Sale**: means the sale of all of the Debtor's assets to the Buyer pursuant to the Sale Order.

1.2.80.  **Sale Motion**: means the *Expedited Motion for Entry of an Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Granting the Purchaser the Protections Afforded to a Good Faith Purchaser, and (C) Granting Related Relief* [Docket No. 7].

1.2.81.  **Sale Order**: means the *Order (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Granting the Purchaser the Protections Afforded to a Good Faith Purchaser, and (C) Granting Related Relief* [Docket No. 64].

1.2.82.  **Schedules**: means the Schedules of Assets and Liabilities, the list of Holders of Interest, and the Statements of Financial Affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code,

Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented on or prior to the Confirmation Date.

1.2.83.  **Secured Claim**: means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

1.2.84.  **Service Contract(s)**: means any product or service contract sold by the Debtor under any contract by and between American Financial and the Debtor which existed as of the Petition Date.

1.2.85.  **Unknown Insurance Reserve Claims**: means the Debtor's portion of the refund claims belonging to those customers who, after the Petition Date, cancel any product or Service Contract sold by the Debtor under any contract by and between American Financial and the Debtor which existed as of the Petition Date and which remained unpaid as of the Effective Date.  It does not include the American Financial Obligation.

1.2.86.  **Unknown Insurance Reserve Claimant(s)**: means the holder(s) of an Unknown Insurance Reserve Claim.

## ARTICLE II.
## TREATMENT OF UNCLASSIFIED CLAIMS

2.1.  **Unclassified Claims**. As provided in 11 U.S.C. § 1123(a)(l), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with Article 2.2 of the Plan and in accordance with the requirements set forth in 11 U.S.C. § 1129(a)(9)(A) and (C).

2.2.  **Allowed Administrative and Priority Tax Claims**.

a.  **Generally**. Except to the extent that any Person entitled to payment of an Allowed Administrative or Priority Tax Claim agrees to a less favorable treatment or unless otherwise ordered by the Bankruptcy Court, each holder of an Allowed Administrative and Priority Tax Claim (other than a Priority Tax Claim based on ad valorem taxes) shall receive, in full satisfaction, discharge, exchange, and release thereof, Cash in an amount equal to such Allowed Claim on or as soon as practicable after the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Claim.  Priority Tax Claims based on ad valorem taxes shall be paid as provided in the Sale Order. Notwithstanding the foregoing, non-tax Administrative Claims incurred by the Debtor in the ordinary course of business shall be paid in full in accordance with the terms and

conditions of the particular transactions and any applicable agreements or as otherwise authorized by the Bankruptcy Code.

b.      **Administrative Expense Bar Date**. All requests for allowance and payment of an Administrative Claim (except for Professional Fee Claims) must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date or such Claims shall be forever barred. Any objection to the allowance of an Administrative Claim, other than a Professional Fee Claim, which is discussed below, must be filed no later than thirty (30) days after the expiration of the Administrative Claim Bar Date (the "**Administrative Claim Objection Deadline**"). The Administrative Claim Objection Deadline may be extended only by an order of the Bankruptcy Court. If no objection to the allowance of an Administrative Expense is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim shall be deemed Allowed as of such date.

c.      **U.S. Trustee Fees**. All outstanding fees owed to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid when due in accordance with applicable law. The Liquidating Debtor shall continue to file required quarterly reports until the Chapter 11 Case is closed under § 350.

d.      **Professional Fee Claims**.

i.      Any final applications for allowance and payment of a Professional Fee Claim for services rendered or reimbursement of expenses incurred through and including the Effective Date must be filed with the Bankruptcy Court and served no later than seventy-five (75) days after the Confirmation Date or such other date as may be fixed by the Bankruptcy Court. All objections to allowance of Professional Fee Claims through the Effective Date must be timely filed and served in accordance with the deadlines established by the Bankruptcy Court.

ii.     Except to the extent that any Person entitled to payment of any Allowed Professional Fee Claim agrees to a less favorable treatment or unless otherwise ordered by the Bankruptcy Court, each holder of an Allowed Professional Fee Claim shall receive, in full satisfaction, discharge, exchange, and release thereof, Cash in an amount equal to such Allowed Professional Fee Claim within five (5) Business Days after such Professional Fee Claim becomes an Allowed Professional Fee Claim, unless the holder agrees to defer a payment of a portion of its Allowed Professional Fee Claim.

e.      **Post-Effective Date Professional Fees**. All claims of Professionals for services rendered or expenses incurred after the Effective Date in connection with the Chapter 11 Case and the Plan including, without limitation, those relating to consummation of the Plan, the preparation, filing, and review of Professional Fee Claims, the prosecution of Estate Litigation Claims and the resolution of Disputed Claims, will be paid by the Liquidating Debtor on receipt of an invoice for such services, or on such other terms as the Liquidating Debtor and the Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. The Liquidating Debtor will have ten days after receiving any such invoice to object to any item contained in that

invoice. If the Liquidating Debtor and any Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to the Professional, the Professional may seek Bankruptcy Court approval of the requested amount.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Claims of the Creditors are divided into the classes listed below. A Claim will be placed in a particular Class only to the extent that the Claim qualifies within the description of that Class and may be in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class. A Claim will be entitled to the treatment accorded a particular Class only to the extent that such Claim is an Allowed Claim.

3.1. **Class 1 Claims: Priority Non-Tax Claims**. All Claims which are (i) accorded priority status pursuant to § 507 of the Bankruptcy Code, (ii) Allowed, and (iii) not an Administrative Claim or Priority Tax Claim. Class 1 is unimpaired.

3.2. **Class 2 Claims: Ally Secured Claim**. Class 2 Claim is unimpaired.

3.3. **Class 3 Claims: Honda Secured Claim**. Class 3 Claim is unimpaired.

3.4. **Class 4 Claims: Other Secured Claims**. Class 4 Claims are unimpaired.

3.5. **Class 5 Claims: American Financial Secured Claim**. Class 5 Claims are impaired.

3.6. **Class 6 Claims: Unknown Insurance Reserve Claims**. Class 6 Claims are impaired.

3.7. **Class 7 Claims: General Unsecured Claims**. Class 7 Claims are impaired.

3.8. **Class 8 Claims: Equity Interest Holders**. Class 8 Interests are impaired.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS

Except as provided herein, each Allowed Claim classified in Article III shall be satisfied in full upon the delivery to the holder of such Claim by the Liquidating Debtor or the Manager of the Cash, property or other consideration provided for in this Article IV for Claims in the Class to which such Allowed Claim belongs. Following the entry of the Confirmation Order, the rights of all Creditors shall be limited exclusively to the specific benefits made available and set forth under this Plan.

4.1. **Treatment of Class 1 Claims (Allowed Priority Non-Tax Claims)**. Each holder of an Allowed Class 1 Claim shall be paid in full and shall receive Cash in an amount equal to the amount of such Allowed Claim as soon as practicable on the later of the Effective Date and the date on which the Claim becomes an Allowed Claim.

The holders of Claims in Class 1 are unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of these claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited.

      4.2. **Treatment of Class 2 Claim (Ally Secured Claim)**. The holder of the Ally Secured Claim previously received the net proceeds from the sale of its Collateral immediately following the Sale to the Buyer pursuant to the Sale Order in full and final satisfaction of its Claim. Any remaining proceeds owed to Ally were subsequently satisfied from the Auto Mall Sale and the Acura Real Estate Sale as part of a settlement agreement reached between the non-Debtor parties with such agreement acting as new value provided to the Debtor's estate in that it allowed for a significant increase in funds available to satisfy what would have been unsecured debt without the new value.

The holders of Claims in Class 2 are unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of these claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited.

      4.3. **Treatment of Class 3 Claim (Honda Secured Claim)**. The holder of the Honda Secured Claim previously received the net proceeds from the sale of its Collateral immediately following the Sale to the Buyer pursuant to the Sale Order in full and final satisfaction of its Claim.

The holders of Claims in Class 3 are unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of these claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited.

      4.4. **Treatment of Class 4 Claims (Other Secured Claims)**. Class 4 shall contain separate subclasses for each Other Secured Claim against the Debtor. Except to the extent that a holder of an Allowed Other Secured Claim agree to less favorable treatment, each holder of an Allowed Other Secured Claim shall, in full and final satisfaction of such Allowed Other Secured Claim be paid Cash in an amount equal to the Allowed amount of such Claim as determined in accordance with section 506(a) of the Bankruptcy Code, on the Effective Date or as soon thereafter as practicable, or receive the Collateral securing its Allowed Other Secured Claim on the Effective Date or as soon thereafter as practicable. Notwithstanding any other provision in section 4.4 of the Plan, any holder of a Class 4 Claim may agree to any treatment of such Claim, which treatment may include preservation of such holder's Lien; provided that such treatment shall not provide a return to such holder, by reason of such Class 4 Claim, having a present value in excess of the amount of such Secured Claim.

      The holders of Claims in Class 4 are unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the holders of these claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited.

4.5. **Treatment of Class 5 Claim (American Financial Secured Claim)**. Within sixty (60) days of the Effective Date, the holder of the American Financial Secured Claim shall be paid the American Financial Settlement Payment of $375,000 in full and complete satisfaction of its Claim. The Settlement Payment will be partially funded, up to $200,000.00, by Auto Mall and a mutual release, attached hereto, will be executed. The holder of the Class 5 Claim is impaired and is entitled to vote to accept or reject this Plan.

4.6. **Treatment of Class 6 Claims (Unknown Insurance Reserve Claims)**. All Unknown Insurance Reserve Claims in Class 6 shall share in the Insurance Reserve Fund on a first come, first serve basis upon the claimant's cancellation of their respective Service Contracts after the Petition Date, which remained unpaid as of the Effective Date, until such time as the Insurance Reserve Fund is depleted. Once the Insurance Reserve Fund is fully depleted, all remaining Unknown Insurance Reserve Claims shall be extinguished without distribution. The holders of Class 6 Claims are impaired and are entitled to vote to accept or reject this Plan.

4.7. **Treatment of Class 7 Claims (General Unsecured Claims)**. The holders of Allowed General Unsecured Claims in Class 7 will receive a Pro Rata share of the Liquidating Debtor's Remaining Assets as soon as practicable on or after the later of (i) the Effective Date, and (ii) the date on which such claims become an Allowed Claim.

4.8. **Treatment of Class 8 Interests (Interests)**. Holders of Interests in Class 8 shall receive nothing on account of such Interests. All Interests shall be cancelled as of the Effective Date. Holders of Interests in this Class are conclusively deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

4.9. **Tax Identification Numbers**. The Liquidating Debtor may require any of the Creditors or Interest holders to furnish to the Liquidating Debtor its employer or taxpayer identification number as assigned by the Internal Revenue Service, and the Liquidating Debtor may condition any Distribution to any of the Creditors or Equity Interest holders upon receipt of such identification number.

## ARTICLE V.
## MEANS FOR THE IMPLEMENTATION OF THE PLAN

5.1. **Liquidating Debtor**. The Liquidating Debtor shall (i) liquidate all property of the Debtor, (ii) liquidate any other assets, if any, of the Debtor, such as Causes of Action under the Bankruptcy Code or otherwise, (iii) pursue any claims against third parties which are property of the Debtor's Estate, (iv) seek determination of such claims, (v) litigate disputed claims; (vi) issue the Liquidating Debtor's portion of the American Financial Settlement Payment to American Financial within sixty (60) days following the Effective Date; (vii) make a Pro Rata distribution to Allowed General Unsecured Claims as provided in the Plan; and (viii) prepare and file any necessary taxes.

5.2. **Vesting of Assets**. Except as provided in the Plan, the Confirmation Order, or the Plan Documents, all remaining Assets of the Debtor and its estate shall vest in the Liquidating Debtor free and clear of all Liens, Claims and Interests that existed before the Effective Date. On

the Effective Date, all Estate Litigation Claims, including Avoidance Actions, if any, shall vest in the Liquidating Debtor.

5.3. **Management of the Liquidating Debtor**. John Tittle, Jr. (the "**Manager**") will be responsible for supervising the liquidation of the Debtor's assets and the consummation of the Plan.

a. **Compensation of Liquidating Debtor's Manager**. The Manager shall be compensated from the Liquidating Debtor's Remaining Assets at his normal hourly rate and will be reimbursed for actual and necessary expenses, with such monthly compensation terminating upon all of the following events occurring: (i) the American Financial Settlement Payment has been made; (ii) all Disputed Claims have been fully resolved; (iii) all Estate Litigation Claims, if any, have been fully resolved; (iv) all Pro Rata distributions to Class 7 General Unsecured Creditors have been made; and (v) all necessary taxes have been filed, thereby necessitating the closing of the Debtor's Chapter 11 Case. To the extent it is necessary for the Manager to employ an attorney or other Professional, such fees and expenses are to be paid by the Liquidating Debtor pursuant to the procedure provided in this Plan.

b. **Liability of the Manager**. The Manager shall use his best judgment and discretion in all things connected therewith and shall not be personally liable for any loss or damage arising in connection with the business of the Liquidating Debtor, either for his acts or for his failure to act unless he personally shall have been guilty of fraud, willful misconduct, or gross negligence. In no case shall the Manager be held liable or responsible for the fraud, willful misconduct, or gross negligence of any employee or agent of the Liquidating Debtor. In addition, the Manager shall be indemnified by and receive reimbursement against and from any and all loss, liability, expense, or damage which he may incur or sustain, in good faith and without fraud, willful misconduct or gross negligence, in the exercise and performance of any of his powers and duties under this Plan. The amounts necessary for all such compensation, indemnification and reimbursement and for all expenses of administration, including counsel fees, shall be withdrawn by the Manager from the Liquidating Debtor's Remaining Assets.

c. **Employees and Agents**. The Manager may select and employ brokers, banks, custodians, investment advisors, attorneys, accountants, auditors, staff (e.g., phone operators, clerical support, etc.) and other agents. The Manager may employ as a consultant to him any Person or Persons having particular knowledge of the Liquidating Debtor's assets. The Manager shall pay the Professionals he retains from the Liquidating Debtor's Remaining Assets.

d. **Plan Payments**. The Manager may rely upon the undisputed, noncontingent and liquidated Claims scheduled by the Debtor in its Schedules filed with the Bankruptcy Court, and the Claims filed with the Bankruptcy Court on or before the Bar Date in making pro rata distributions (or reserving funds for any Disputed Claims) to holders of General Unsecured Claims. The Manager shall reserve funds for any Disputed

Claims before he elects to distribute funds Pro Rata to Class 7 General Unsecured Claims.

5.4. **Continued Operations**. The Liquidating Debtor will continue its operations after the Effective Date as necessary to: (i) liquidate all property of the Debtor, (ii) liquidate any other assets of the Debtor, such as Causes of Action under the Bankruptcy Code or otherwise, (iii) pursue any Estate Litigation Claims, (iv) seek determination of such claims, (v) litigate Disputed Claims; (vi) pay the Liquidating Debtor's portion of the American Financial Settlement Payment to American Financial within sixty (60) days following the Effective Date; (vii) make a pro rata distribution to Allowed General Unsecured Claims as provided in the Plan; and (viii) file any necessary taxes. In performing these functions, the Liquidating Debtor shall, among other things, be authorized to:

     a. retain Professionals deemed necessary to perform the duties of the Liquidating Debtor;

     b. pay reasonable and necessary costs and expenses of liquidating;

     c. abandon assets that are burdensome or of inconsequential value;

     d. dissolve the Liquidating Debtor upon the liquidation and distribution of all property of the Liquidating Debtor; and

     e. take all steps necessary to close the Bankruptcy Case.

5.5. **Actions Without Bankruptcy Court Approval**. The Confirmation Order shall authorize the Liquidating Debtor without further approval of the Bankruptcy Court: (i) to sell any asset, subject to any required consent of any Creditor with a Lien upon such asset; (ii) to settle any Disputed Claim; (iii) settle any Cause of Action; or (iv) pay reasonable fees of retained Professionals.

5.6. **Costs of Continued Operations**. The costs of the Liquidating Debtor's continued operations, including (i) the fees and expenses of the Manager; (ii) the fees and expenses of the Liquidating Debtor's Professionals, (iii) the salaries and expenses of other employees and agents hired by the Manager pursuant to this Plan, and (iv) the expenses of the Manager including the fees and expenses of an attorney or other Professional hired by the Manager, shall be paid from the Liquidating Debtor's Remaining Assets, and shall be paid prior to any distribution to Class 7 General Unsecured Creditors.

5.7. **Depositories**. The Liquidating Debtor may deposit its Cash at such banks, in the types of accounts, as the Liquidating Debtor may, in its sole discretion, select.

5.8. **Maintenance of Register**. The Liquidating Debtor shall at all times maintain a register of the names, addresses, amount of Claims of the General Unsecured Creditors.

5.9. **Determination of Disputed Claims.** The Manager shall be authorized to object to the allowance of Claims filed with the Bankruptcy Court.

## ARTICLE VI.
## INSURANCE RESERVE FUND

6.1. **Insurance Reserve Fund**. On the Effective Date, the Insurance Reserve Fund shall be established for the purpose of making payments to Unknown Insurance Reserve Claimants. The Fund Administrator, as defined herein, shall be authorized to take all steps necessary to complete the formation of the Insurance Reserve Fund; provided, that, prior to the Effective Date, the Liquidating Debtor or the Fund Administrator, as applicable, may act as organizers of the Insurance Reserve Fund and take such steps in furtherance thereof as may be necessary, useful or appropriate under applicable law to ensure that the Insurance Reserve Fund shall be formed and in existence as of the Effective Date.

6.2. **Assets of the Insurance Reserve Fund**. On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidating Debtor shall transfer to the Insurance Reserve Fund the Insurance Reserve Fund Assets from the Liquidating Debtor's Assets, which shall be deemed vested in the Insurance Reserve Fund. The Insurance Reserve Fund Assets shall remain fully segregated from the Liquidating Debtor's Remaining Assets and other assets owned by the Fund Administrator.

6.3. **Rights and Powers of the Insurance Reserve Fund and the Fund Administrator**. The Fund Administrator shall have the full authority to take any steps necessary to administer the Insurance Reserve Fund Assets, including without limitation, the duty and obligation to liquidate Insurance Reserve Fund Assets, and to make distributions therefrom in accordance with the provisions in the Plan. The Fund Administrator shall be responsible for managing the Insurance Reserve Fund until such time as the Insurance Reserve Fund Assets are depleted. The Insurance Reserve Fund will not be required to file taxes.

6.4. **Appointment of a Fund Administrator**. The appointment of American Financial as Fund Administrator (the "**Fund Administrator**") shall be approved by the Confirmation Order and such appointment shall be effective on the Effective Date. The Fund Administrator shall serve pursuant to the terms of the Plan. Any successor Fund Administrator shall be designated by the previous Fund Administrator or the Court.

a. **Compensation of Fund Administrator**. The Fund Administrator has agreed to act as administrator of the Insurance Reserve Fund at no cost to the Insurance Reserve Fund.

b. **Employees and Agents**. The Fund Administrator may select and employ brokers, banks, custodians, investment advisors, attorneys, accountants, auditors, staff (e.g., phone operators, clerical support, etc.) and other agents. The Fund Administrator may employ as a consultant to him any Person or Persons having particular knowledge of the Liquidating Debtor's assets.

c. **Liability of the Fund Administrator**. The Fund Administrator shall use its best judgment and discretion in all things connected therewith and shall not be personally liable for any loss or damage arising in connection with the Insurance Reserve Fund, either for its acts or for its failure to act unless it personally shall have been guilty of fraud, willful

misconduct, or gross negligence. In no case shall the Fund Administrator be held liable or responsible for the fraud, willful misconduct, or gross negligence of any employee or agent of the Liquidating Debtor. In addition, the Fund Administrator shall be indemnified by and receive reimbursement against and from any and all loss, liability, expense, or damage which it may incur or sustain, in good faith and without fraud, willful misconduct or gross negligence, in the exercise and performance of any of its powers and duties under this Plan. The amounts necessary for all such compensation, indemnification and reimbursement and for all expenses, including counsel fees, shall be withdrawn by the Fund Administrator from the Insurance Reserve Fund Assets.

6.5.     **Insurance Reserve Claim Form**.  All Unknown Insurance Reserve Claimants that seek claims against the Insurance Reserve Fund for the cancellation of their Service Contracts shall fill out the Insurance Reserve Fund Proof of Claim Form attached hereto as **Exhibit C** and shall submit the Insurance Reserve Proof of Claim to the Fund Administrator at the following address:

American Financial Warranty Corporation
Post Office Box 7719
The Woodlands, TX 77387
Tel: (800) 964-4811
Fax: (281) 681-2327

6.6.     **Insurance Reserve Fund Distribution**.  Distributions to Unknown Insurance Reserve Claimants shall be made within sixty (60) days' notice of the Fund Administrator's receipt of the Insurance Reserve Proof of Claim Form from the Unknown Insurance Reserve Claimant. The distribution will be sent to the address provided by the Unknown Insurance Reserve Claimant on the Insurance Reserve Proof of Claim.  The date on which the Fund Administrator determines that the Insurance Reserve Fund is fully depleted is referred to as the "**Insurance Reserve Fund Termination Date**".  Upon the Insurance Reserve Fund Termination Date, the Fund Administrator shall notify all remaining Unknown Insurance Reserve Claimants within thirty (30) days via U.S. first class mail that the Insurance Reserve Fund has been terminated.  If three (3) calendar years have passed since the Effective Date and the Insurance Reserve Fund is not fully depleted, the Fund Administrator shall donate such remaining cash to charity.

6.7.     **Costs of Insurance Reserve Fund**. The costs of the Insurance Reserve Fund, including the fees and expenses of the Fund Administrator, if any, shall be paid from the Insurance Reserve Fund Assets.

6.8.     **Depositories**. The Fund Administrator may deposit its Insurance Reserve Fund Assets at such banks, in the types of accounts, as the Fund Administrator may, in its sole discretion, select.

6.9.     **Maintenance of Register**. The Fund Administrator shall at all times maintain a register of the names, addresses, amount of Claims of the Unknown Insurance Reserve Claimants, which register shall be available under seal.

6.10. **Liability of Third Parties**. American Financial shall remain liable for the American Financial Obligation when Unknown Insurance Reserve Claimants cancel their Service Contracts.

## ARTICLE VII.
## AMERICAN FINANCIAL SETTLEMENT

7.1. **Parties to the American Financial Settlement**. The parties to the American Financial Settlement include American Financial, the Debtor, the Liquidating Debtor, MLSC Holdings, L.P. ["Auto Mall"], and Churchill (collectively, the "**Parties**" and each a "**Party**").

7.2. **American Financial Secured Claim**. Pursuant to the American Financial Loan and the American Financial Security Agreement, American Financial asserts an alleged Secured Claim and potential Administrative Claim against the Debtor based on its Security Interests in the MasterTech vehicle service contracts and other collateral.

7.3. **American Financial Settlement Payment**. On or before the expiration of sixty (60) days from the Effective Date, the Liquidating Debtor in conjunction with a contribution of up to $200,000 from Auto Mall will pay American Financial $375,000.00, which constitutes the "**Settlement Payment**." American Financial shall deem the Settlement Payment to be made on behalf of the Liquidating Debtor and Auto Mall and acknowledge it as sufficient consideration to support each of the obligations and releases contained in Article VII of the Plan. As additional consideration for the settlement, Mac Churchill**,** individually, has provided new value to the estate by pledging a certain ownership interest in Mac Churchill Properties North, Ltd. to Ally, who drew down on the funds received from such ownership interest and the remaining funds in the approximate amount of $1,000,000 which amount remained in the estate for the benefit of its creditors. Additionally, Auto Mall will contribute an amount up to $200,000 to assist with funding the Settlement Payment. Prior to the Effective Date, American Financial's counsel shall furnish to the Manager's counsel the bank account wire payment information in order to remit the American Financial Settlement Payment to American Financial.

7.4. **Releases by the Parties.** Upon receipt of the Settlement Payment, the Parties unconditionally and irrevocably waive and release all claims against each other pursuant to the "**Mutual Release Agreement**" attached hereto as **Exhibit A**.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1. **Assumption or Rejection of Executory Contracts and Unexpired Leases**. This Plan shall constitute a motion to assume or reject Executory Contracts as provided herein. All Executory Contracts of the Debtor shall be deemed rejected by the Debtor upon the Effective Date, unless an Executory Contract (a) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) is identified in the Plan or the Confirmation Order to be assumed, or (c) is the subject of a motion to assume filed on or before the Confirmation Date.

8.2. **Approval of Assumption or Rejection**. Entry of the Confirmation Order constitutes the approval under sections 365 and 1113 of the Bankruptcy Code of the assumption or rejection, as applicable, of the Executory Contracts assumed or rejected under the Plan.

8.3. **Rejection Damages Bar Date**. All proofs of claim asserting Claims arising from the rejection of any Executory Contract under the Plan are required to be filed with the Bankruptcy Court no later than the first Business Day that is at least thirty (30) days after the Effective Date. Any such Claim not filed within that time will be forever barred.

## ARTICLE IX.
## DETERMINATION OF CLAIMS

9.1. **Objections to Claims**. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is at least one hundred eighty (180) days after the Effective Date, but the Bankruptcy Court may approve a later date on motion filed (but not necessarily heard) before the first Business Day that is at least one hundred eighty (180) days after the Effective Date.

9.2. **Distributions upon Allowance or Disallowance of Disputed Claims**. No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim shall be reserved and will commence only when the Claim becomes an Allowed Claim. Distributions for Disputed Claims may be reserved and such amounts will not be distributed to holders of Interests.

9.3. **Contingent Claims**. Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan. The holder of a Contingent Claim will be entitled to a distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with any Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

## ARTICLE X.
## PRESERVATION OF LITIGATION CLAIMS

10.1. **Retention of Estate Litigation Claims**. In accordance with § 1123(b)(3), all Estate Litigation Claims (including without limitation all Avoidance Actions), if any, are retained and reserved for the benefit of holders of Allowed Claims and Interests, and shall be transferred to, and vested in, the Liquidating Debtor, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Liquidating Debtor. Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Liquidating Debtor which shall be clothed with the sole and exclusive standing and authority to assert or waive any such privilege on behalf of the Debtor, Estate or Liquidating Debtor. All Estate Litigation Claims shall be deemed to have been transferred to, and vested in, the Liquidating Debtor as of the Effective Date. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Litigation Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Litigation Claims of which Debtor is presently aware, and shall not act as a limitation on the potential Estate

Litigation Claims that may exist. It is the specific intention of this Plan that all Estate Litigation Claims, including all Avoidance Actions and all associated remedies, and any other causes of action, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws shall all be retained and preserved under this Plan to be transitioned to, and vested in the Liquidating Debtor. All Estate Litigation Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate. A list of all known and active Estate Litigation Claims is attached hereto as **Exhibit B**.

10.2. **Prosecution of Estate Litigation Claims**. For the avoidance of doubt, the Manager shall have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Estate Litigation Claim and will do so in his capacity as a representative of the Estate in accordance with § 1123(b)(3)(B). The Liquidating Debtor will bear the fees and costs associated with litigating the Estate Litigation Claims and will fund such expenses from the Liquidating Debtor's Remaining Assets. The Manager will have sole discretion to determine in his business judgment which Causes of Action to pursue, whether to commence litigation, which to settle, and the terms and conditions of those settlements without the need of further court approval.

10.3. **Distribution of Estate Litigation Claim Proceeds**. Any monetary judgment, award, or other Cash proceeds resulting from the settlement or prosecution of the Estate Litigation Claims will be distributed in accordance with the Plan to the holders of any outstanding Allowed Claims and Interests after deduction of the reasonable and necessary fees and costs that the Liquidating Debtor incurs in connection with the Manager's performance of his duties.

10.4. **Preservation of Insurance**. Any discharge and release of the Debtor from Claims as provided in the Plan or under the Bankruptcy Code, except as necessary to be consistent with the Plan, will not diminish or impair the enforceability of any insurance policy that may cover Claims against any Debtor or any other Person.

**ARTICLE XI.
CONDITIONS PRECEDENT**

11.1. **Conditions to Confirmation**. The following are conditions precedent to confirmation of the Plan:

a. **Approval of Disclosure Statement and Plan**. The Bankruptcy Court enters a Final Order approving the Disclosure Statement and Plan.

b. **Form of Confirmation Order**. The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtor. If the Debtor is unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve such dispute.

c. **Substance of Confirmation Order**. The Confirmation Order contains the following:

(i) The provisions of the Confirmation Order are nonseverable and mutually dependent;

(ii)     Approval of the assumption or rejection of all executory contracts and unexpired leases under the Plan not previously assumed or rejected pursuant to an order of the Bankruptcy Court;

(iii)    The Debtor is released and discharged from all obligations arising under all executory contracts and unexpired leases rejected by the Debtor during the Chapter 11 Case or under the Plan; and

(iv)    Retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible under applicable law, and at least to the extent contemplated by Article XIII of the Plan.

11.2.  **Conditions to Effectiveness**. The following are conditions precedent to the occurrence of the Effective Date:

a.     The Confirmation Date occurs;

b.     The Confirmation Order becomes a Final Order; and

c.     Each of the Plan Documents to be issued, entered into, delivered, or filed under the Plan has been issued, entered into, delivered, or filed and is effective.

11.3.  **Waiver of Conditions**. The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, or any further action other than proceeding to confirmation and consummation of the Plan.

11.4.  **Notice of Effective Date**. Within five (5) business days after the Effective Date, the Debtor shall serve notice of the Effective Date and the Administrative Claim Bar Date on all creditors and parties-in-interest.

## ARTICLE XII.
## DISCHARGE AND RELEASE

12.1.  Discharge.  Upon entry of the Confirmation Order, Debtor shall be discharged of all debts incurred or arising prior to the Confirmation Date.

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan and/or Confirmation Order, the plan distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtor or any of its Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liabilities (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment or a termination**

of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (A) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code or Bankruptcy Rule 3003; (B) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (C) the holder of such Claim or Interest has accepted the Plan. Subject to the terms of the Plan and/or the Confirmation Order, any default by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed satisfied on the Effective Date. Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring. Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, its Estate, the Liquidating Debtor and all successors thereto. As provided in section 524 of the Bankruptcy Code, subject to the terms of the Plan and/or Confirmation Order such discharge shall void any judgment against the Debtor, its Estate, the Liquidating Debtor or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Liquidating Debtor or its property and Assets to the extent it relates to a discharged Claim or Interest.

12.2.    Permanent Injunction.

Except as otherwise expressly provided in the Plan or any other order entered previously by the Bankruptcy Court with respect to a compromise, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtor are permanently enjoined, on and after Confirmation Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Liquidating Debtor, or its Assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Northern District of Texas; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtor, the Liquidating Debtor, or its Assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Northern District of Texas; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Liquidating Debtor, or its assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Northern District of Texas; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtor, the Liquidating Debtor, or its assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Northern District of Texas.  The foregoing injunction will extend to successors of the Debtor and Liquidating Debtor and their respective property and interests in the property.

12.3. <u>Releases by Holders of Claims and Interests and Other Related Persons</u>.

**Except as otherwise provided in the Plan, the Confirmation Order, as of the Effective Date, each holder of a Claim or an Interest that voted in favor of the Plan or has not opted out of the releases as provided on the ballot, whether such holder of a Claim or an Interest votes to reject the Plan, and each Released Person shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Debtor, the Liquidating Debtor, and the Released Persons, including Churchill, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or known, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, this Chapter 11 Case, the Debtor's restructuring, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Persons, the restructuring of Claims and Interests before or during this Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence relating to the Debtor taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Person that constitutes willful misconduct (including fraud) or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument or agreement executed to implement the Plan.**

**Notwithstanding the above, nothing in this Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.**

12.4. <u>Releases by the Debtor and its Estate</u>.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or Confirmation Order or pursuant to any other order previously entered by this Bankruptcy Court, for good and valuable consideration, including the service of the parties released herein to facilitate the expeditious liquidation of the Debtor**

and the implementation of the restructuring contemplated by the Plan, on and after the **Effective Date, all Released Persons, including Churchill, are deemed released and discharged by the Debtor and its Estate, and the Liquidating Debtor, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertible on behalf of the Debtor, or the Liquidating Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, its Estate, the Liquidating Debtor, or its respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on ore relating to, or in any manner arising from, in whole or in part, the Debtor, the Liquidating Debtor, this case, the Debtor's restructuring, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Persons, the restructuring of Claims and Interests before or during this Chapter 11 Case, the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Person or a former officer or director of the Debtor that constitutes willful misconduct (including fraud) or gross negligence. The foregoing release shall not apply to any express contractual or financial obligations or any right or obligations arising under or that is part of the Plan or any agreements entered into pursuant to, in connection with, or contemplated by the Plan.**

12.5.   **Information Regarding the Release, Injunction, and Related Provisions**

The Plan contains certain releases, as described in Article XII herein and Article XIV of this Disclosure Statement, entitled "Releases by Holders of Claims and Interests and Other Related Persons."

All holders of Claims that (i) vote to accept the Plan, (ii) abstain from voting on the Plan and do not opt out of the releases in Article XII of the Plan, (iii) vote to reject the Plan and do not opt out of the releases in Article XII of the Plan, (iv) are presumed to accept and do not opt out of the releases in the Article XII of the Plan, or (v) are deemed to reject and who do not opt out of the releases in the Article XII of the Plan will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the releases and third-party releases contained in Article XII of the Plan. The Ballot and the Notice of Non-Voting Status shall provide the opportunity for the holders of Claims to opt out of being a Releasing Party.

Importantly, all holders of Claims and Interests that are not in voting Classes that do not opt out to the inclusion of such holder as a Releasing Party under the provisions contained in Article XII of the Plan, will be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtor and the Released Parties. The releases are an integral element of the Plan.

The consideration provided for the Third-Party Releases and the mechanism by which Holders of Claims and Interests who are impaired under the Plan choose to consent to such releases satisfy the requirements for third party releases and are consistent with recent chapter 11 cases.

First and foremost, both Mac Churchill individually and the Debtor's affiliate Auto Mall have provided significant new value to the Estate and funding for the Plan in exchange for the Third-Party Releases. Without the consideration provided by both Mac Churchill individually and Auto Mall, the proposed Plan would be impossible and there would be no distribution left for unsecured creditors or Unknown Insurance Reserve Claimants.

Specifically, Mac Churchill contributed significant new value to the Debtor and its Estate by pledging a certain ownership interest in Mac Churchill Properties North, Ltd. to Ally, who drew down on the funds received from such ownership interest and the excess funds in the approximate amount of $1,000,000 remained in the Estate for the benefit of its creditors. Without these funds, the Debtor's Estate would already be insolvent and there would be no distribution on behalf of the remaining Claims.

Auto Mall, as additional consideration for the Third-Party Releases, has agreed to fund the Plan in an amount of up to $200,000 that will be contributed to the Insurance Reserve Fund to pay those Unknown Insurance Reserve Claimants who cancel their Service Contracts. Without this contribution, there would be no means to implement the Insurance Reserve Fund and those Unknown Insurance Reserve Claimants who cancel their Service Contracts would receive no recovery.

Accordingly, the Plan as proposed not only resolves the Debtor's disputes with American Financial, but also allocates sizeable funding for Unknown Insurance Reserve Claimants for when those individuals cancel their Service Contracts. The Plan as proposed likely will provide a small recovery to general unsecured creditors as well. Without the contributions of both Mac Churchill and Auto Mall, the Plan would not be funded, and all such Claims would be extinguished without payment.

Finally, as additional consideration for the Third-Party Releases, all impaired Holders of Claims and Interests, irrespective of whether they are entitled to vote on the Plan, will receive a solicitation package which will include materials allowing such holders to affirmatively consent to the Third-Party Releases by choosing not to opt out via a form that can either be mailed, emailed, or hand-delivered to the Debtor. The opt-out mechanism and the consideration for the Third-Party Releases is consistent with chapter 11 plans confirmed within the Fifth Circuit. See, e.g., In re Cobalt Energy, Inc., No. 17-36709 (MI) (S.D. Tex. April 5, 2018).

## ARTICLE XIII.
## RETENTION OF COURT JURISDICTION

13.1.  Retention of Bankruptcy Court Jurisdiction.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under or related to the Chapter 11 Case including matters concerning and related to the Liquidating Debtor for, among other things, the following purposes:

13.1.1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

13.1.2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

13.1.3. Resolve any matters related to: (i) the assumption, assignment, or rejection of any Executory Contract or unexpired lease to which a Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or unexpired lease, cure obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or unexpired lease; (ii) any potential contractual obligation under any Executory Contract or unexpired lease that is assumed and/or assigned and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

13.1.4. Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

13.1.5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

13.1.6. Adjudicate, decide, or resolve any and all matters related to Causes of Action;

13.1.7. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

13.1.8. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including this Plan;

13.1.9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation,

interpretation, or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

13.1.10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

13.1.11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases and injunctions and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions, if any;

13.1.12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions to insiders, if any;

13.1.13. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

13.1.14. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

13.1.15. Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

13.1.16. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.1.17. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

13.1.18. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

13.1.19. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

13.1.20. Hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment or the termination

of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

13.1.21.  Enforce all orders previously entered by the Bankruptcy Court;

13.1.22.  Hear any other matter not inconsistent with the Bankruptcy Code;

13.1.23.  Enter an order concluding or closing the Chapter 11 Case; and

13.1.24.  Enforce the injunction, release, and exculpation provisions set forth in Article XII.

## ARTICLE XIV.
## MODIFICATION AND REVOCATION OF THE PLAN

14.1.  Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (as may be amended or modified), any supplement to the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all holders of Claims against or Interests in the Debtor (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

14.2.  Modification of the Plan.

Subject to the limitations contained herein, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan.

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved

pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

     14.3.  <u>Revocation or Withdrawal of the Plan</u>.

     The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date or the Effective Date and to file subsequent plans. If the Debtor revokes or withdraw the Plan, or if Confirmation or consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

**ARTICLE XV.**
**MISCELLANEOUS PROVISIONS**

     15.1.  <u>Payment of Statutory Fees</u>.

     All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Liquidating Debtor shall pay, including any outstanding U.S. Trustee fees, prior to the closing of the Chapter 11 Case, in accordance with the Bankruptcy Code and the Bankruptcy Rules, all fees payable pursuant to 28 U.S.C. § 1930 which accrue after the Effective Date through and including the closing of the Chapter 11 Case.

     15.2.  <u>Governing Law</u>.

     Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, this Plan, the rights, duties and obligations arising under this Plan, and any claim or controversy directly or indirectly based upon or arising out of this Plan or the transactions contemplated by this Plan (whether based on contract, tort, or any other theory), including all matters of construction, validity and performance, shall be governed by and interpreted, construed and determined in accordance with, the internal laws of the State of Texas (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).

     15.3.  <u>Corporate Action</u>.

     Prior to, on and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the shareholders or directors of the Debtor shall be deemed to have occurred and shall be in effect prior to, on and after the Effective Date pursuant to the applicable general corporation law of Texas.

     15.4.  <u>Severability of Plan Provisions</u>.

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court or other court of competent jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.5. <u>Successors and Assigns</u>.

The Plan shall be binding on, and shall inure to the benefit of the Debtor, and its respective successors and assigns. The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

15.6. <u>Reservation of Rights</u>.

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall have occurred. Neither the filing of this Plan, any nor statement or provision contained herein, nor the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor prior to the Effective Date. If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Case shall be bound or deemed prejudiced by any such concession or settlement.

15.7. <u>Further Assurances</u>.

The Debtor is authorized to execute, deliver, file or record such contracts, agreements, instruments, releases and other documents and take or cause to be taken such action as may be necessary or appropriate to effectuate, implement and further evidence the terms, provisions and intent of this Plan and to consummate the transactions and transfers contemplated by the Plan.

15.8. <u>Notice and Service of Documents</u>.

Except as set forth herein, as of the Effective Date, with the exception of the Debtor and the United States Trustee, all parties having filed entries or notices of appearance or requests for service in the Chapter 11 Case shall not be provided with further notice and Persons desiring to remain on the Debtor's Bankruptcy Rule 2002 service lists shall be required to file a request for continued service and to serve such request upon counsel to the Debtor within 30 days after the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be

removed from the Debtor's Bankruptcy Rule 2002 service list upon the Effective Date without further notice pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Debtor, and all persons on the Debtor's Bankruptcy Rule 2002 service list.

All notices, requests and demands required or permitted to be provided to the Debtor under the Plan shall be in writing and shall be deemed to have been duly given or made (a) when actually delivered (i) by certified mail, return receipt requested, (ii) by hand delivery or (iii) by U.S. mail, postage prepaid or, (b) in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

### If to the Debtor or Liquidating Debtor:

> John Y. Bonds, III
> Joshua N. Eppich
> Bonds Ellis Eppich Schafer Jones LLP
> 420 Throckmorton Street, Suite 1000
> Fort Worth, Texas 76102
> (817) 405-6900 telephone
> (817) 405-6902 facsimile

15.9. <u>Conflicts</u>.

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

15.10. <u>Exemption From Certain Transfer Taxes</u>.

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, provided under the Plan, from the Debtor to the Liquidating Debtor, the Insurance Reserve or any other Person or Entity pursuant to the Plan, including with respect to the Assets, may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.11. <u>Plan Supplement</u>.

Not later than ten (10) days prior to the Confirmation Hearing, the Debtor shall file with the Bankruptcy Court any supplement to the Plan which shall include the exhibits identified in this Plan, if any, and any other such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.12. <u>Determination of Tax Liability</u>.

The Debtor or the Manager is authorized, but not required, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

15.13. <u>Entire Agreement</u>.

This Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

15.14. <u>Closing of the Chapter 11 Case</u>.

At such time as it selects, the Liquidating Debtor may seek a final decree pursuant to section 350 of the Bankruptcy Code formally closing the Debtor's Chapter 11 Case.

15.15. <u>Change of Control Provisions</u>.

Any acceleration, vesting or similar change of control rights under any employment, benefit or other arrangements triggered by the consummation of this Plan shall be waived or otherwise cancelled under this Plan.

15.16. <u>Substantial Consummation</u>.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

15.17. <u>No Admission Against Interest</u>.

Neither the filing of this Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Bankruptcy Court involving the Debtor or any of its former or present officers, directors or Interest holder.

15.18. <u>Post Confirmation Notice</u>.

Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee's Office, counsel for the Debtor and all persons on the Debtor's Bankruptcy Rule 2002 service list. With the exception of counsel for the Debtor and the United States Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtor within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be removed from the Debtor's Bankruptcy Rule

2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading.

Dated:  April 23, 2019                                      Respectfully submitted,

                                                            **MAC CHURCHILL, INC. D/B/A MAC CHURCHILL ACURA**


                                                            By: */s/ Mac Churchill*
                                                            Its:  President